DAYTON & MICHIGAN RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94831.   Promulgated November 2, 1939.

*R. Kemp Slaughter*, Esq., for the petitioner.
*E. L. Corbin*, Esq., for the respondent.

### OPINION.

MURDOCK: The Commissioner determined a deficiency of $15,155.76 in the income tax of the petitioner for the calendar year 1935. The issue for decision is whether the petitioner is entitled to deduct, as interest, $96,900 paid on its preferred stock. The petitioner contends that the preferred stock was in fact an indebtedness and the pay-

ments were not dividends but interest. The parties agree that a subordinate issue will depend entirely upon decision of this main issue. The facts have been stipulated and are found in accordance with the stipulation.

The petitioner was incorporated in Ohio in 1851. A law of the State of Ohio was enacted on April 16, 1870, which authorized any railroad company incorporated under the laws of the state to issue preferred stock and to guarantee dividends of not more than 8 percent on the stock, for the purpose of providing means for the redemption of its bonds. The petitioner at that time had 7 percent mortgage bonds outstanding and it also had common stock outstanding. The petitioner issued 8 percent preferred stock pursuant to that act. The stock had no voting rights. Dividends in the amount of 8 percent were guaranteed by the petitioner. A mortgage of the petitioner's property was executed as security for the payment of the dividends on the preferred stock. The mortgage provided that the properties should not thereafter be encumbered to the prejudice of the preferred stockholders, and that in case of default in the payment of dividends on the preferred stock the trustee under the mortgage could enter into possession and take over management of the railroad upon demand of a preferred stockholder. It also provided that the proceeds of any sale of the property, after the payment of all lawful prior charges, should be applied to the redemption of the preferred stock at its par value. The petitioner had leased its properties in 1863 to the Cincinnati, Hamilton & Dayton Railroad Co. The lessee, which had been paying the interest on the mortgages of the petitioner, assented to the issue of the preferred stock and to the mortgage, guaranteed punctual payment of the dividends on the preferred stock according to the terms of the stock, and thereafter paid the dividends on the preferred stock. The Toledo & Cincinnati Railroad Co., a wholly owned subsidiary of the Baltimore & Ohio Railroad Co., acquired the lease of the Cincinnati, Hamilton & Dayton Railroad Co. upon the properties of the petitioner. Thereafter, the Baltimore & Ohio Railroad Co. in 1917 assumed the guarantee of the dividends on the preferred stock of the petitioner. It paid $96,900 in 1935 to the holders of the preferred stock of the petitioner as the dividends of 8 percent on the stock.

The above recital of facts is not intended as a full statement of the stipulated facts. Its purpose is merely to indicate the way in which the the issue has arisen. All of the stipulated facts have been carefully considered in reaching the conclusion hereinafter indicated. The parties agree that the payment of $96,900 is a part of the gross income of the petitioner. The petitioner recognizes that if the payment of that amount to its stockholders was the payment of a divi-

dend, it is not entitled to any deduction, whereas the respondent concedes that if the payment was of interest, then the petitioner is entitled to a deduction, regardless of the fact that the payment was made by the Baltimore & Ohio Railroad Co. directly to the holders of the preferred stock. The petitioner contends that the certificates of so-called preferred stock were in fact not preferred stock but certificates of indebtedness, so that the payment of 8 percent thereon was a payment of interest deductible under section 23 (b) of the Revenue Act of 1934.

Many cases involving similar questions have been considered by the Board and the courts. Each case has turned, of necessity, upon the facts of that particular case. However, certain basic principles for deciding whether or not a certain issue is a stock or an indebtedness, are now well established. These principles are sufficiently stated for present purposes in *Helvering* v. *Richmond, Fredericksburg & Potomac Railroad Co.*, 90 Fed. (2d) 971, as follows:

The essential difference between a "stockholder" and a "creditor" is that the stockholder intends to embark upon the corporate adventure, taking the risks of loss attendant upon it that he may enjoy the chances of profit. The creditor on the other hand, does not intend to take such risks so far as they may be avoided but merely to lend his capital to others who do intend to take them. *Warren* v. *King*, 108 U. S. 389, 399, 2 S. Ct. 789, 27 L. Ed. 769. While no comprehensive rule may be laid down for distinguishing in all cases between an investment in a corporation and a loan to it, one of the most important considerations is whether the right to share in the assets of the corporation in case of dissolution is subject to the rights of the creditors. If subject to such right, there is a strong presumption that the interest in question is that of a stockholder. * * * If it is not subject to such right, or if, as here, it is preferred over the right, the status of a creditor rather than a stockholder is indicated.

The Supreme Court of Ohio in 1890 decided the case of *Miller* v. *Ratterman*, 47 Ohio St. 141; 24 N. E. 496. The plaintiff held some of the preferred stock of the Dayton & Michigan Railroad Co., the same stock that is involved in the present proceeding. He brought suit against the treasurer of Hamilton County, Ohio, to enjoin the collection of a tax. He contended that the preferred stock was stock of an Ohio corporation and, as such, was not subject to the tax. The county treasurer claimed that the certificates were in reality evidence of indebtedness of the company and subject to tax. The court considered the matter fully and carefully. The question was whether the certificates were certificates of stock or certificates of indebtedness because, if they were the latter, they were taxable. The court first considered the purpose and effect of the Act of April 16, 1870, and stated that it authorized the issuance of preferred stock to enable railroad companies to pay their bonded debts, but did not authorize the exchange of one form of indebtedness for another, and the pay-

ment of dividends as authorized by the act was limited to payment from earnings. The court held that the stock actually issued by the Dayton & Michigan Railroad Co. under the act gave to the stockholders the right to receive the dividends only out of earnings and the mortgage did not give to the preferred stockholders rights prior to those of creditors, including general creditors. It held further that, taking all of the facts and circumstances into consideration, the rights of the preferred stockholders were subordinate to those of all creditors, and concluded that the certificates were preferred stock and not evidences of debt. It said that any other interpretation of the provisions of the various instruments would mean that the entire transaction was illegal. It held finally that the shares were not subject to the tax.

The Board may not be bound to follow the conclusion of the Ohio court that the certificates were stock and not evidences of indebtedness, but a decision of the highest court in a state as to property rights within the state is, if not binding, at least competent authority for the Board to follow. The Supreme Court of the State of Ohio held in that case that the dividends on this stock were payable only out of earnings of the corporation, the mortgage did not give the preferred stockholders rights prior to those of creditors, and the rights of the preferred stockholders under all of the circumstances were subordinate to those of creditors. The rights of the preferred stockholders having thus been determined by the highest court in Ohio, and there being no conflict of authority on the subject in the state, we conclude from those rights that the stock was in fact stock and not evidence of indebtedness.

The petitioner relies upon the case of *Helvering* v. *Richmond, Fredericksburg & Potomac Railroad Co.*, *supra*, wherein the court held that certain preferred stock, with guaranteed dividends, was an indebtedness. The guaranteed stock in that case was issued pursuant to a statute of Virginia and was secured by a mortgage prior to liens of general and secured creditors which could be foreclosed on default in payment of the guaranteed dividends. One very obvious difference between this case and the *Richmond, Fredericksburg & Potomac Railroad Co.* case is that the issuance of certificates of indebtedness under this statute of Ohio would have been illegal, whereas the issuance of the certificates of indebtedness under the law of Virginia was legal. Other important differences are that there the dividends were payable without regard to earnings, while here they were payable only out of earnings, and the certificates in this case did not give the holders thereof rights equal or prior to those of general creditors, whereas the certificates in the Virginia case did.

*Decision will be entered for the respondent.*